**Jeffrey W. CORREIA, Appellant,**

**v.**

**Robert A. McDONALD, Secretary of Veterans Affairs, Appellee.**

**No. 13–3238.**

United States Court of Appeals
for Veterans Claims.

July 5, 2016.

Glenn R. Bergmann and Daniel D. Wedemeyer, both of Bethesda, Maryland, were on the brief for the appellant.

Tammy L. Kennedy, Acting 'General Counsel; Mary Ann Flynn, Assistant General Counsel; Ronen Z. Morris, Acting Deputy Assistant General Counsel; and Michael J.A. Klein, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, Chief Judge, and SCHOELEN and PIETSCH, Judges.

HAGEL, Chief Judge:

Jeffrey W. Correia appeals through counsel a September 30, 2013, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) an increased disability rating for a right knee disability prior to October 21, 2008, described as post-operative meniscectomy with traumatic arthritis, currently rated 30% disabling, irrespective of post-surgical periods of 100% disability ratings; (2) an increased disability rating for a right knee disability from October 21, 2008, described as a post-operative total knee arthrotomy with traumatic arthritis, currently rated 30% disabling; and (3) an increased disability rating for a left knee disability, described as degenerative joint disease, currently rated 20% disabling. Mr. Correia's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a).

On April 15, 2015, this matter was referred to a panel of the Court to determine the proper interpretation of the final sentence of 38 C.F.R. § 4.59. On June 1, 2015, the proceedings in this matter were stayed, pending the resolution of *Petitti v. McDonald,* Vet.App. No. 13–3469. On October 28, 2015, the Court issued its decision in *Petitti v. McDonald,* 27 Vet.App. 415 (2015), and on November 18, 2015, the stay of proceedings in this case was lifted. The parties submitted supplemental memoranda of law in December 2015 and February 2016.

Because the final sentence of § 4.59 requires that the listed range of motion testing be conducted to the extent practicable in all cases involving joint disabilities, and because such testing was not performed in this case, the Court will vacate the September 2013 Board decision and remand the matter for further development and readjudication consistent with this decision.

## I. FACTS

Mr. Correia served on active duty in the U.S. Navy from March 1974 to May 1975. Immediately following his discharge from service, Mr. Correia applied for VA disability compensation benefits for a right knee disability. In August 1975, a VA regional office granted his claim and assigned a 10% disability rating for the postoperative residuals of a right knee meniscectomy with traumatic arthritis. Mr. Correia did not appeal that decision, and it became final.

In July 1994, Mr. Correia sought an increased disability rating for his right knee condition. In December 1994, the regional office assigned Mr. Correia a temporary total evaluation for surgical convalescence[1] between September 16 and October 31, 1994, but otherwise denied entitlement to a disability rating in excess of the 10% already assigned. Mr. Correia

---

1. In September 1994, Mr. Correia underwent a right knee arthroscopy. R. at 1092.

filed a Notice of Disagreement with that decision and ultimately appealed to the Board, requesting a personal hearing.

In December 1995, Mr. Correia underwent a VA orthopedic examination that found degenerative joint disease of the right knee with severe crepitus, laxity, and marked decrease in extension and function. Based on that examination, in July 1996 the regional office increased Mr. Correia's right knee disability rating to 30%. The rating decision contained the following notation: "THIS IS A COMPLETE GRANT OF BENEFITS SOUGHT ON SUBSTANTIVE APPEAL." Record (R.) at 1043. In its August 1996 letter advising Mr. Correia of its decision, VA stated that it had "granted" Mr. Correia's claim for an increased disability rating, R. at 1040, and then informed him:

> All benefits claimed have been allowed without consideration by the Board of Veterans Appeals. Because of this, no further consideration will be taken on your [S]ubstantive [A]ppeal[,] which is considered resolved.
>
> . . .
>
> If you think our decision is wrong, you should write and tell us why. The enclosed VA Form 4107 explains your right to appeal.

R. at 1041 (emphasis omitted). The record contains an August 1996 deferred rating decision that acknowledges that Mr. Correia requested a hearing on his Substantive Appeal form, and then in response to the handwritten question, "Does vet still want hearing?" a handwritten, circled response states, "No." R. at 1039.

In November 2002, Mr. Correia submitted claims for an increased disability rating for his right knee disability and entitlement to benefits for a left knee condition secondary to the right knee disability.

In March 2003, Mr. Correia underwent a VA joints examination. The examiner diagnosed severe degenerative joint disease of the right knee and moderate degenerative joint disease of the left knee, caused by an increased load on that knee due to the service-connected right knee condition. Accordingly, in May 2003, although the regional office denied entitlement to a disability rating in excess of 30% for the right knee disability, it granted benefits for the left knee condition secondary to the right knee disability and assigned a 20% disability rating for that condition. Mr. Correia did not appeal that decision, and it became final.

In October 2007, Mr. Correia sought increased disability ratings for his bilateral knee disabilities. In December 2007, he underwent a VA orthopedic examination to address these claims, which resulted in a diagnosis of "[s]tatus post[-]meniscectomy times two of the right knee," R. at 798, and a normal left knee, R. at 799. Based on that examination, in January 2008, the regional office denied Mr. Correia's claims for increased disability ratings. Mr. Correia filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

VA obtained medical records in February 2009. They included a February 2008 VA physical therapy consultation note stating that Mr. Correia's knees buckled when he walked on uneven surfaces and a March 2008 VA orthopedic consultation note that documented knee buckling and locking, along with the use of a right knee brace.

In November 2011, Mr. Correia testified at a hearing before a Board member. The Board member outlined two issues for consideration: "Entitlement to an increased rating for status post total right knee replacement, which is at 30[%] and entitlement to an increased rating for degenerative joint disease of the left knee which is

at 20[%]." R. at 226. Mr. Correia testified to the functional impairments caused by his knee disabilities and discussed what he saw as inadequacies in the VA medical examinations he had been provided.

In May 2012, the Board remanded Mr. Correia's claims for de novo adjudication "of all pertinent evidence." R. at 213.

In September 2012, Mr. Correia underwent another VA orthopedic examination. The examiner reviewed Mr. Correia's medical history, described the effect of his knee disabilities on his gait, noted the effects of flare-ups, conducted various range of motion studies and muscle strength tests, and considered the functional impairment caused by Mr. Correia's knee disabilities. Specifically, Mr. Correia reported weekly flare-ups of "intense pains that bring him to tears," R. at 76–77; and the examiner (1) recorded range of motion findings for both initial and repetitive use; (2) observed reduced, weakened, and painful movement, as well as swelling, disturbed locomotion, and interference with sitting, standing, and weight-bearing bilaterally on repetitive use; and (3) recorded that Mr. Correia's muscle strength permitted active movement against some resistance.

In September 2013, the Board issued the decision on appeal. The Board determined that an April 2011 disability rating reduction to 10% for Mr. Correia's left knee disability was in error and restored the 20% disability rating for that condition as of July 1, 2011. The Board determined,

however, that higher disability ratings were not warranted for either of Mr. Correia's knee disabilities and therefore denied his claims. This appeal followed.

## II. ANALYSIS

### A. Motion to Strike

On January 5, 2015, the Secretary filed an opposed motion to strike portions of Mr. Correia's reply brief that cite nonprecedential single judge memorandum decisions. See Reply Brief (Br.) at 7. The Secretary argues that citation to such authority is prohibited by Rule 30 of the Court's Rules of Practice and Procedure (Rules). The Court will deny the Secretary's motion.

At the time the Secretary's motion was filed, Rule 30 (Citation of Certain Authority) provided, in relevant part:

A party, intervenor, or amicus curiae *may not cite as precedent* any action designated as nonprecedential by the Court or any other court, or that was withdrawn after having been published in a reporter, except when the cited action has binding or preclusive effect in the case on appeal (such as via the application of the law-of-the-case doctrine). A copy of any unpublished action referred to shall be attached to the document containing the reference.

U.S. VET.APP. R. 30(a) (emphasis added).[2]

The Secretary misreads former Rule 30(a) when he argues that, because the

**2.** On November 19, 2015, Rule 30(a) was revised and now reads:

(a) Citation of Nonprecedential Authority. A party, intervenor, or amicus curiae may not cite as precedent any action designated as nonprecedential by the Court or any other court, or that was withdrawn after having been published in a reporter, except when the cited action has binding or preclusive effect in the case on appeal (such as

via the application of the law-of-the-case doctrine). Actions designated as nonprecedential by this Court or any other court may be cited only for the persuasive value of their logic and reasoning, provided that the party states that no clear precedent exists on point and the party includes a discussion of the reasoning as applied to the instant case. With the exception of decisions of this Court available electronically, a copy of

cases Mr. Correia cites in his reply brief do not have binding or preclusive effect in the case on appeal, he may not cite them at all. The Secretary fails to appreciate that the Rule only prohibited citation of nonprecedential decisions *for precedential value* where the nonprecedential decisions do not have binding or preclusive effect in the case on appeal. There were no other prohibitions on the citation of nonprecedential authority in Rule 30(a).

■ As Mr. Correia explained in his reply brief, the two nonprecedential decisions cited are *not* cited for precedential effect, but rather simply to inform the Court of the factual circumstances of those cases, particularly the position taken by the Secretary in those cases, which is contrary to the position the Secretary has taken in this case.[3] *See* Reply Br. at 7 n.1. This is not a situation in which Mr. Correia argues that the Court should adopt the logic or reasoning of the Court in the nonprecedential decisions cited; that would, clearly, have run afoul of the prohibition on citing nonprecedential decisions for precedential purposes. Accordingly, the Court will deny the Secretary's motion to strike.

## B. Duty To Assist

### 1. Parties' Arguments

Mr. Correia argues that the Board's determination that the September 2012 VA examination was adequate is clearly erroneous. In particular, he contends that the examination report does not contain "all of the [range of motion] findings necessary for the Board to competently determine the appropriate [disability] rating." Appellant's Br. at 7.

This argument rests on 38 C.F.R. § 4.59, which concerns painful motion of the musculoskeletal system. Specifically, Mr. Correia argues that the regulation *requires* medical examiners to "test[ ] for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint," 38 C.F.R. § 4.59 (2015), and that, because the September 2012 VA examiner did not conduct all such tests, the Board's determination that the examination is adequate is clearly erroneous. He contends that

> [t]he full [range of motion] findings [§ ] 4.59 requires were necessary because the reported [range of motion] findings [provided by the examiner] do not facially rule-out greater loss of motion in one of the other [range of motion] parameters [§ ] 4.59 identifies, which could potentially support a higher right-knee rating under [38 C.F.R. § 4.71a,] D[iag]nostic] C[ode] 5261, through application of D[iagnostic] C[ode] 5055, based on limitation of extension; and a higher left-knee rating under D[iagnostic] C[ode] 5260 or D[iagnostic] C[ode] 5261 for limitation of flexion or extension.

Appellant's Br. at 10.

For his part, the Secretary contends that Mr. Correia's interpretation of § 4.59 is contrary to the plain language of the regulation, which the Secretary maintains does not "establish[ ] a rigid set of protocols for VA ... rating examinations."

---

any unpublished action referred to shall be attached to the document containing the reference.
U.S. Vet.App. R. 30(a).

**3.** The Court could just as easily take judicial notice of the Secretary's contrary positions in the two nonprecedential cases cited—and any

others it finds, see below—in the course of rendering its decision in this case. *See Smith v. Derwinski,* 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of *facts* not subject to reasonable dispute." (citing Fed. R.Evid. 201(b))); *Brannon v. Derwinski,* 1 Vet. App 314, 316–17 (1991).

Secretary's Br. at 10–11. In the alternative, the Secretary argues that, should the Court find the plain language of § 4.59 ambiguous, his interpretation of the regulation as not requiring particular tests for joint conditions is entitled to substantial deference because it is reasonable and not contrary to the plain meaning of the regulation. Secretary's Br. at 14 (citing *Camacho v. Nicholson*, 21 Vet.App. 360, 363 (2007)).

### 2. Regulatory Interpretation

#### a. Is § 4.59 Ambiguous?

In full, § 4.59 provides:

> With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

38 C.F.R. § 4.59. At the outset, we note that, although the first sentence of § 4.59 refers only to arthritis, the Court has held that the regulation is, in fact, also applicable to joint conditions other than arthritis.

*Burton v. Shinseki*, 25 Vet.App. 1, 3–5 (2011). Moreover, in the decision on appeal, the Board conceded that § 4.59 was applicable to Mr. Correia's degenerative joint disease of the knees.

■ The "interpretation of a . . . regulation is a question of law" that the Court reviews de novo. *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed.Cir.2003). As always, to discern the meaning of a regulation, we begin with the plain language of the regulation. *Cf. Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("We begin with the language of the . . . Act itself."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed.Cir.1994) (noting that the canons of statutory interpretation apply to interpreting regulations), *superseded by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed.Cir.2005). "[I]f the meaning of the regulation is clear from its language, then that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)).

■ In considering the plain language of § 4.59, we are mindful that we must give the regulation's words "their 'ordinary, contemporary, common meaning,'" absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (quoting *Walters v. Metropolitan Ed. Enterprises, Inc.*, 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)). Further, "'a [regulation] ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting *Washing-*

*ton Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879)).

Although we are concerned here with the final sentence of § 4.59—"The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint"—that sentence must be read in the context of the regulation as a whole. *See Vazquez–Claudio v. Shinseki,* 713 F.3d 112, 115 (Fed.Cir.2013) ("In construing regulatory language, we must read the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning.").

As the Court recently explained, § 4.59 "is one of several regulations that precede the rating schedule for the musculoskeletal system and explain how to arrive at proper evaluations under the [diagnostic codes] appearing in the disability rating schedule." *Petitti,* 27 Vet.App. at 424. Section 4.59 concerns painful motion of the musculoskeletal system generally; specifically, it "provides guidance for noting, evaluating, and rating joint pain." *Burton,* 25 Vet. App. at 4.

Section 4.59 first describes *ways in which painful motion can be discerned—* "facial expression, wincing, etc., on pressure or manipulation;" muscle spasms; and crepitation[4] in tendons, ligaments, or joint structures. 38 C.F.R. § 4.59. The regulation states that such findings should be noted in the medical evidence to assist the rating authority in assigning a disability rating that adequately accounts for painful motion. In that context, then, we read the final sentence of § 4.59 as ex-

plaining *the kinds of test results* that "should" be obtained to permit an adjudicator to assess *the effect* of painful motion—range of motion tests for both passive and active motion, and in both weight-bearing and non-weight-bearing circumstances. *Id.* The regulation also states that, "if possible," the same test results should be obtained for the "opposite undamaged joint," presumably for comparison purposes. *Id.* The question before the Court is what "should" means in the final sentence of § 4.59.

The Court has held that the use of the word "should" does not create a mandatory requirement. *Palmer v. Nicholson,* 21 Vet.App. 434, 437 (2007) (citing *United States v. Montgomery,* 462 F.3d 1067, 1069–70 (9th Cir.2006) (holding that "use of 'should' often connotes a strong suggestion, not a requirement")); *Gomez v. Principi,* 17 Vet.App. 369, 376 (2003) (*comparing* BLACK'S LAW DICTIONARY 1019 (6th ed. 1990) (defining "must" as being "primarily of mandatory effect"), *with id.* at 1379 (defining "should" as "ordinarily implying duty or obligation; although usually no more than an obligation of propriety or expediency, or a moral obligation")); *see also Qwest Corp. v. Federal Communications Comm'n,* 258 F.3d 1191, 1200 (10th Cir.2001) ("The term 'should' indicates a recommended course of action, but does not itself imply the obligation associated with 'shall.' "). Considering only the word "should" in the final sentence of § 4.59, then, could lead the Court to conclude that the plain language of the regulation *does not* create a requirement that medical examinations in cases of joint disabilities contain particular test results.

**4.** Crepitation is "the noise made by rubbing together the ends of a fractured bone." DOR-LAND'S ILLUSTRATED MEDICAL DICTIONARY 429 (32d ed. 2012) [hereinafter DORLAND'S]. Section 4.59 indicates that, for the purpose of identi-

fying "points of contact which are diseased," flexion, which is "the act of bending," *id.* at 717, should be tested for crepitation. 38 C.F.R. § 4.59.

■■ The ordinary meaning of a term, however, "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *see Holloway v. United States,* 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999) ("In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.'" (quoting *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995))). We find, with respect to the final sentence of § 4.59, that the word "should" does not unmistakably carry its ordinary, precatory meaning. Instead, we find that the final sentence of § 4.59 is ambiguous because, as even the Secretary concedes, the whole of § 4.59 is meant to *guide adjudicators in determining the proper level of disability of joints.* If the range of motion testing listed in the final sentence of § 4.59 is not required, it is unclear how, exactly, an adjudicator could adequately rate a claimant's joint disability and account for painful motion. *See Burton,* 25 Vet.App. at 4 (stating that the final sentence of § 4.59 directs "how to test joints for pain"). Further, if the identified testing is merely a recommendation, one might expect the regulation to provide some guidance regarding *when* the testing is appropriate or necessary to adequately evaluate and rate a joint disability. The regulation as written contains none. Absent any such guidance, one is left to wonder why such testing is "suggested" at all if it is not, in fact, required. *See Duncan,* 533 U.S. at 174, 121 S.Ct. 2120 (stating that courts are to interpret statutes and regulations so that "no clause, sentence, or word" is deprived of effect (quoting *Washington Market Co.,* 101 U.S. at 115)). Consequently, the Court is not convinced that the intent and

purpose of § 4.59—to "explain how to arrive at proper evaluations under the [diagnostic codes] ... in the disability rating schedule," *Petitti,* 27 Vet.App. at 424— might be satisfied were we to interpret "should" as simply suggesting a course of action.

Because, in the context of § 4.59, we find that "should" is susceptible to more than one meaning—that is, it could be either precatory or mandatory—we conclude that this portion of the regulation is ambiguous.

### b. Should the Court Defer to the Secretary's Interpretation of § 4.59?

■ Having found the final sentence of § 4.59 ambiguous, the Court concludes that no deference is due to the Secretary's proffered interpretation that the regulation creates no requirement that particular kinds of range of motion testing be performed in cases of joint disabilities. *See Auer v. Robbins,* 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that an agency's interpretation of an ambiguous regulation is entitled to substantial deference); *see also Mulder v. Gibson,* 27 Vet.App. 10, 16 (2014) ("[C]ourts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." (citing *Smith v. Nicholson,* 451 F.3d 1344, 1349 (Fed.Cir.2006))). We reach this conclusion not because the Secretary's interpretation is unreasonable or necessarily inconsistent with the language of the regulation, but because the Court is simply unable to discern his actual interpretation of the final sentence of § 4.59.

As Mr. Correia points out, the Secretary has, in at least two cases before the Court,

conceded that remand is necessary where the Board relied on medical evidence that did not comport with the final sentence of § 4.59. *See Franklin v. Shinseki,* No. 12–0369, 2013 WL 1897184 (Vet.App. May 7, 2013); *Davis v. Shinseki,* No. 12–2013, 2013 WL 6622931 (Vet.App. Dec. 17, 2013). On its own, the Court has also identified several other cases in which the Secretary appears to have interpreted § 4.59 in accordance with Mr. Correia's position. *See Bartlett v. McDonald,* No. 13–1867, 2014 WL 4748597 at *2 (Vet.App. Sept. 24, 2014) ("The Court agrees with the appellant, and the Secretary, that the Board is relying on a medical examination that lacks clarity. Although the examiner performed some [range of motion] testing, it is unclear whether the appellant's joints were" tested as indicated in the final sentence of § 4.59 (citation omitted)); *Wilson v. Shinseki,* No. 12–3246, 2014 WL 646208, at *3 (Vet.App. Feb. 20, 2014) (The Secretary conceded that the Board erred in relying on an examination that did not conduct the testing indicated in § 4.59, but argued that the error could not be cured because of a permanent change in the appellant's knee disability.); *Womack v. Shinseki,* No. 11–0458, 2013 WL 351405 at *6 (Vet.App. Jan. 30, 2013) ("The Secretary concedes that, if pain on active and passive motion is relevant in determining the appropriate rating for Mr. Womack's right foot injuries, the January 2008 VA examination is inadequate."); *Rango v. Shinseki,* No. 062723, 2009 WL 174365 at *2 (Vet.App. Jan. 26, 2009) ("The Secretary concedes that the July 2004 VA medical examination was flawed in respect to

the arthritis claim because it did not comply with 38 C.F.R. § 4.59 (2008) (requiring that, for arthritis, an evaluation of range of motion must consider pain on active and passive motion, and with weightbearing and nonweightbearing movement)."); *see also Smith,* 1 Vet.App. at 238 (regarding judicial notice of facts not subject to reasonable dispute).

On the other hand, the Court has found only a single case, other that Mr. Correia's, in which the Secretary has argued to the Court, as he does here, that the final sentence of § 4.59 *does not* create a testing requirement with which VA examiners must comply. *See Robinson v. McDonald,* No. 14–1813, 2015 WL 6746213 (Vet.App. Nov. 5, 2015), Secretary's Br. at 26 ("While 38 C.F.R. § 4.59 does indicate that[, to evaluate painful motion,] 'joints [ . . . ] should be tested for pain on both active and passive motion, in weight bearing and nonweight-bearing and if possible, with range of the opposite undamaged joint,' th[e . . . ] plain language does not require this testing in every case.").

The Court finds it telling that the Secretary failed to address, in any of his filings, the substance of Mr. Correia's argument regarding his inconsistent position on this issue, instead standing on his motion to strike Mr. Correia's reference to two of those cases in which he took a contrary position.[5] In view of this discrepancy, and given that the Secretary appears to ordinarily concede before this Court that § 4.59 creates a requirement for VA examiners to conduct the range of motion testing listed in the final sentence where such testing can be performed, the Court can-

---

5. The Court further notes Mr. Correia's assertion that a "less than exhaustive search" of VA's database of Board decisions revealed 14 Board decisions dated between 2011 and 2015 that found that § 4.59 requires the listed testing. *See* Appellant's Dec. 23, 2015, Supplemental (Supp.) Memorandum (Mem.) at 5

and attachments. The fact that many of those decisions were the result of instructions contained in joint motions for remand granted by the Court lends additional support to our finding that the Secretary's interpretation of § 4.59 is inconsistent.

not conclude that the Secretary's proffered interpretation in this case represents "the agency's considered view on the matter."[6] *Mulder*, 27 Vet.App. at 16; *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (" '[L]itigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action, advanced for the first time in the reviewing court."); *Hudgens v. McDonald*, No. 2015–7030, 823 F.3d 630, 638, 2016 WL 2893254 at *7 (Fed.Cir. May 18, 2016) (finding that, where the interpretation of a regulation proffered by the Secretary on appeal contradicts the interpretation of the regulation in a vast majority of Board decisions, "the agency's interpretation con-

flicts with a prior [agency] interpretation," and therefore *Auer* deference is inappropriate); *Fountain v. McDonald*, 27 Vet. App. 258, 270–71 (2015) (stating that prior Board interpretations of a regulation "provide[ ] information about the application of the Secretary's position" and accepting the Board's interpretation of "organic disease of the nervous system" in 38 C.F.R. § 3.309(a) as including tinnitus). Accordingly, that interpretation is entitled to no deference.

c. Proper Interpretation of § 4.59

■ We hold that the final sentence of § 4.59 creates a requirement that certain range of motion testing be conducted whenever possible in cases of joint disabilities.[7] Our conclusion is compelled by

---

**6.** In his brief in a case currently pending before the Court, the Secretary acknowledges "that the question of whether 38 C.F.R. § 4.59 requires 'that particular range of motion measurements be obtained or tests conducted in claims for benefits for joint conditions' is currently pending before a panel of this Court" and asserts that he "maintains the position [he] expressed" in Mr. Correia's case. *See Stout v. McDonald*, No. 15–0583, Secretary's Br. at 7 n.1. Given that the Secretary's brief in Mr. Stout's case was filed after he took his position in the current matter, the Court affords no weight to the fact that he has reasserted the same position.

**7.** The Secretary argues that the final sentence of § 4.59 cannot create a testing requirement because, if it did, absurdity would result. Specifically, he contends that, because the upper extremities are not weight-bearing, requiring that all joints be tested in weight-bearing capacity would require veterans with upper extremity joint disabilities to walk on their hands. Secretary's Dec. 23, 2015, Supp. Mem. at 5; Secretary's Feb. 8, 2016, Supp. Mem. at 3, 5–6. The Court expresses doubt about this.

First, the Secretary's current upper *and* lower extremity disability benefits questionnaires ask the examiner to comment on whether any range of motion movements are painful on active or passive testing and in weight-bearing or non-weight-bearing use.

See, e.g., VA Form 21–0960M–9, May 2013 (Knee and Lower Leg Conditions); VA Form 21–0960M–7, May 2013 (Hand and Finger Conditions); and VA Form 21–0960M–12, May 2013 (Shoulder and Arm Conditions), available at http://www.benefits.va.gov/compensation/dbq_ListByDBQFormName.asp (last visited June 30, 2016).

Second, the Court is aware of three cases at the Court in which the Secretary has agreed to remand a claim involving an upper extremity joint for VA to provide a medical examination that complies with the final sentence in § 4.59. *See Franklin*, 2013 WL 1897184, at *3 (right shoulder); Appellant's Supp. Mem., Attachment BVA 05–15 051 (Mar. 18, 2013) (degenerative joint disease of the left shoulder); *id.* at Attachment BVA 04–33 221 (May 30, 2013) (degenerative arthritis, right shoulder).

Further, although the Secretary argues that disability benefits questionnaires are designed to be over-inclusive and should not be held to a standard of legal perfection or found to reflect the Agency's full and considered judgment on the matter, Secretary's Feb. 8, 2016, Supp. Mem. at 3, the Secretary has, in other contexts, relied on the content of a disability benefits questionnaire to support his interpretation of a regulation. *See, e.g., Gill v. Shinseki*, 26 Vet.App. 386, 391 (2013) (noting the Secretary's reliance on his disability benefits questionnaire for hypertension to support his

§ 4.59's place in the regulatory scheme. *See Holloway,* 526 U.S. at 6, 119 S.Ct. 966. As noted above, § 4.59 is one of several regulations that precede the disability rating schedule and provide guidance to adjudicators on how to properly evaluate various musculoskeletal disabilities. More specifically, § 4.59 is generally referred to in concert with §§ 4.40 and 4.45, which concern functional loss in the musculoskeletal system.

Section 4.40 explains that musculoskeletal disabilities primarily manifest in an inability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination[,] and endurance." 38 C.F.R. § 4.40 (2015). That regulation states that it "is *essential*" that an examination on which a disability rating is based "adequately portray the anatomical damage[ ] and the functional loss" that occurs as a result of those elements. *Id.* (emphasis added). Section 4.45 explains that "the factors of [joint] disability reside in reductions of their normal excursion of movements in different planes," and provides that an adjudicator "will" consider factors including less or more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. 38 C.F.R. § 4.45 (2015).

Read together, § 4.40 and § 4.45 demonstrate that particular information regarding the function of the joints is "essential" to permit an adjudicator to determine the proper disability rating for a joint disability. Neither of those regulations, however, explains *how* that information should be obtained, except that § 4.40 refers to "an examination," but the Secretary has answered this question in § 4.59. That regulation outlines three things examiners "should" do to ensure that VA adjudicators have all of the information necessary to properly evaluate a joint disability: (1) carefully note facial expression or wincing on pressure or manipulation and relate that to the affected joint; (2) carefully note crepitation in the soft tissues or joint structures; and (3) test for pain throughout range of motion in various ways. We are concerned here only with the last (and make no findings regarding the first and second), but it seems obvious to us that VA has determined that range of motion evidence is necessary in cases of joint disabilities. Further, when VA orders a medical examination to assess the current level and severity of the claimant's disability, this reflects either an explicit or implicit determination that there is insufficient medical evidence in the record to adequately evaluate and rate the claimant's disability. *See Schafrath v. Derwinski,* 1 Vet.App. 589, 595 (1991) ("Where the record does not adequately reveal the current state of the claimant's disability, a VA examination must be conducted."); *but see Hart v. Mansfield,* 21 Vet.App. 505, 508 (2007) ("VA may not pursue ... development if the purpose is to obtain evidence against the claim."). Consequently, we are left with the inescapable conclusion that, to be adequate, a VA examination of the joints

interpretation of Diagnostic Code 7101 Note (1), and finding that argument persuasive).

Despite the Secretary's inconsistent arguments about the legal strength of his disability benefits questionnaires, the Court accepts that whether upper extremities are or can be weight-bearing is a medical question that it is not competent to answer. Instead, the Court trusts that its decision today will be taken as

requiring the range of motion testing listed in the final sentence of § 4.59 in every case in which those tests *can* be conducted. Moreover, *in this case,* we are concerned with Mr. Correia's knees, which are undoubtedly weight-bearing under the Secretary's proffered definition of the term; accordingly, the range of motion testing required by § 4.59 should have been performed.

must, wherever possible,[8] include the results of the range of motion testing described in the final sentence of § 4.59.

### 3. Application

■ Although Mr. Correia's argument focuses on the September 2012 VA examination, the Secretary does not dispute that *none* of the medical evidence of record contains results of all of the range of motion testing that we now hold is required by the final sentence of § 4.59. He also does not dispute that such testing can be conducted on Mr. Correia's knees. Accordingly, the Court concludes that the Board's determination that VA examinations of record are adequate and that VA therefore satisfied its duty to assist is clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *D'Aries v. Peake,* 22 Vet. App. 97, 103 (2008); *Nolen v. Gober,* 14 Vet.App. 183, 184 (2000); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990); 38 C.F.R. § 4.2 (2015). Remand is warranted.

Because Mr. Correia will be provided a new examination on remand, the Court need not address his additional argument that the September 2012 examination was inadequate because the examiner failed to address whether Mr. Correia experiences additional limitation of motion during flare-ups and did not affirmatively state that he could not feasibly identify or estimate any such additional loss. On remand, the Board will arrange an orthopedic examination to evaluate the severity of Mr. Correia's bilateral knee disabilities. That examination should record the results of range of motion testing "for pain on both active and passive motion [and] in weight-bearing and nonweight-bearing,"[9] *as well as* the necessary findings to evaluate functional loss during flare-ups. 38 C.F.R. § 4.59; *see Mitchell v. Shinseki,* 25 Vet.App. 32, 44 (2011); *DeLuca v. Brown,* 8 Vet.App. 202, 206–07 (1995). If for some reason the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. After the new examination is completed, the Board will reconsider the disability ratings assigned for Mr. Correia's bilateral knee disabilities.

### C. Remaining Arguments

Mr. Correia argues, and the Secretary concedes, that the Board failed to adequately address the question of entitlement to a separate disability rating for instability of the right knee in light of the evidence of record. Accordingly, on remand the Board should expressly consider this issue, including the question of whether Mr. Correia's 1994 claim for benefits for a right knee disorder remains pending.

The Court acknowledges that Mr. Correia has asserted additional errors in the Board decision on appeal, namely that the Board erred in finding that the November 2011 Board hearing officer complied with his duties under 38 C.F.R. § 3.103, along with several reasons or bases arguments. The § 3.103 issue is moot because Mr. Correia is now undoubtedly aware of the issues in his case and the evidence necessary to establish entitlement to the benefits he seeks. On remand, he is free to

---

8. Again, we leave it to medical professionals to determine whether the listed range of motion testing can be performed on the joints at issue in a particular case. Further, to the extent that the Secretary argues that the words "if possible" in the final sentence of § 4.59 render the entire sentence permissive, he is incorrect. *See* Secretary's Br. at 12. That phrase plainly refers only to the testing of "the opposite undamaged joint," and presumably is included to account for joints that do not have an opposite or whose opposite is also damaged. 38 C.F.R. § 4.59.

9. Here, both knees are damaged, so it is not possible to test the "opposite undamaged joint." 38 C.F.R. § 4.59.

identify and ask VA to obtain, or to submit on his own, the evidence necessary to demonstrate entitlement to increased disability ratings.

Further, because the Board will necessarily issue a new decision on remand and therefore must provide a new statement of reasons or bases for its decision, the Court need not address Mr. Correia's reasons or bases arguments at this time, including his arguments that the Board failed to adequately explain why he was not entitled to a 60% disability rating under 38 C.F.R. § 4.71a, Diagnostic Code 5055, and referral for consideration of an extraschedular disability rating. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). With respect to the latter issue, on remand the Board should consider both *Johnson v. McDonald*, 762 F.3d 1362 (Fed.Cir.2014), and *Yancy v. McDonald*, 27 Vet.App. 484 (2016).

On remand, Mr. Correia is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372–73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). "A remand is meant to entail a critical examination of the justification for the decision" by the Board. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

### III. CONCLUSION

Upon consideration of the foregoing, the Secretary's January 5, 2015, motion to strike is denied. The September 30, 2013, Board decision is VACATED, and the matter is REMANDED for further development and readjudication consistent with this decision.