Citation Nr: 1755082 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 13-16 874 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for service-connected intervertebral disc syndrome (IVDS) and degenerative arthritis of the lumbar spine. 


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel





INTRODUCTION

The Veteran served on active duty from November 1989 to February 2010. This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem.

This matter initially came before the Board in September 2016. Then, the Board granted an increased disability rating of 10 percent for the Veteran's lumbar spine disorder prior to March 29, 2013, and remanded the matter of an initial disability rating in excess of 10 percent prior to and after that date for additional development. 

In September 2016, the Board also remanded claims of entitlement to service connection for neurological disorders of the right and left hands. By way of a May 2017 rating decision, the VA granted service connection for cubital tunnel syndrome of the bilateral upper extremities and degenerative arthritis in the bilateral elbows. This represents a full grant of the benefits sought, and the issues are no longer in appellate status. See Grantham v. Brown, 114 F. 3d 1156, 1158 (Fed. Cir. 1997). The record contains no indication that the Veteran has disagreed with the initial rating or effective date assigned, thus, those matters are not in appellate status. See Grantham, 114 F. 3d at 1158 (holding that a separate notice of disagreement must be filed to initiate appellate review of "downstream" elements such as the disability rating or effective date assigned).

In July 2016, the Veteran testified at a Board hearing at the RO before the undersigned Veterans Law Judge. A transcript of this hearing is of record. 

This appeal was processed using the Veterans Benefits Management System (VBMS) and the Legacy Content Manager (LCM) system. The relevant documents are located in both VVA and LCM.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.

REMAND

Regrettably, remand is yet again necessary in order to provide an adequate examination for the Veteran's claim. 

In increased evaluation claims, a VA examination report is not adequate without an adequate explanation for an examiner's failure to evaluate the functional effects of a flare-up. Sharp v. Shulkin, 29 Vet. App. 26 (2017). The Board may accept a VA examiner's statement that he or she cannot offer an opinion in that regard without resorting to speculation, but only after determining that this is not based on the absence of procurable information or on a particular examiner's shortcomings or general aversion to offering an opinion on issues not directly observed. Although not binding on VA examiners, the VA Clinician's Guide instructs examiners when evaluating certain musculoskeletal conditions to obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves. Sharp, 29 Vet. App. at 34-35, citing VA CLINICIAN'S GUIDE, ch. 11. For example, a VA examination report is not adequate when the VA examiner failed to elicit relevant information as to the veteran's flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record- including the veteran's lay information-or explain why she or he could not do so. Sharp, 29 Vet. App. at 34-35. Additionally, VA examinations for musculoskeletal conditions must include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. 38 C.F.R. § 4.59 (2017); Correia v. McDonald, 28 Vet. App. 158 (2016). 

VA provided an examination in May 2017. During the clinical interview, the Veteran described having flare-ups in his low back after being on his feet. AT no point did the Veteran describe what occurs during his flare-ups, to include any additional functional loss and the severity, frequency, duration, precipitating and alleviating factors, of any such loss during flare-ups. The examiner concluded that she was unable to say without mere speculation the degree to which pain, fatigability, or incoordination significantly limited functional ability during flare-ups because the examination was not being conducted during a flare state. The examiner also concluded that pain during weight-bearing, non-weight-bearing, and passive range of motion could not be performed or was not medically appropriate. 

This examination is inadequate because the examiner failed to elicit relevant information from the Veteran regarding his flares or ask him to describe the additional functional loss, if any, he suffered during flares. The examination report merely shows that the Veteran would have flare-ups after standing. The examiner noted that the examination was neither medically consistent nor inconsistent with with the Veteran's statements describing functional loss during flare-ups, but no description was provided of such statements. Absent any determination that the examiner's speculation opinion was provided based on the lack of procurable evidence or on her aversion to offering an opinion on an issue not directly observable, another examination is required. Additionally, the examiner should clarify any responses regarding the Correia questions.

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

2. After any additional records are associated with the claims file, afford the Veteran a VA examination to identify the severity of his service-connected low back disability. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

The appropriate Disability Benefits Questionnaire shall be utilized. In addition, the examiner must elicit from the Veteran a full description of his flare-ups, to include the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares. The examiner must also address testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing. If not medically appropriate or cannot be performed, a short supporting explanation must be provided. 

3. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2017). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

4. Ensure compliance with the directives of this remand. If a report is deficient in any manner, implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

5. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claim must be readjudicated. If the claim remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).