Citation Nr: 1826272 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 11-02 917 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for residuals of a left ankle sprain.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

L. Hoover, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1986 to August 1991. 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in March 2010 by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. 

A Notice of Disagreement was received in June 2010. In November 2010, a Statement of the Case was issued, and, in January 2011, the Veteran filed his substantive appeal (via a VA Form 9).

In May 2016, the Board remanded the claims on appeal for additional development and the case now returns for further appellate review. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Veteran seeks an initial increased rating for his left ankle disability, characterized as residuals of a left ankle sprain. Such disability has been evaluated as 10 percent disabling. Service treatment records reflect that during a period of active duty, the Veteran sustained an ankle sprain. 

The Veteran was afforded a VA examination for his ankle in March 2010, where he reported constant left ankle pain, limitation of motion, weakness stiffness, and intermittent swelling and giving way. The Veteran reported having flares of pain once a week that last one to two days. The Veteran also reported that prolonged standing and walking aggravate his condition. He reported that pain medications and avoiding weight bearing activities temporarily help to alleviate symptoms. He denied that his condition affects his ability to groom and bathe, but does affect his ability to run or participate in activities that involve prolonged standing or walking. Objective findings found no evidence of instability. The range of motion was 15 degrees of dorsiflexion, 25 degrees of plantar flexion, inversion to 20 degrees and eversion to 10 degrees with pain but no diminution of motion. Tenderness of the ankle was observed on examination. 

Subsequent to the March 2010 VA examination, the Court, in Correia v. McDonald, 28 Vet. App. 158 (2016), held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. Thus, the Court's holding in Correia establishes additional requirements that must be met prior to finding that a VA examination is adequate. After reviewing the VA examinations of record, the Board finds that they are incomplete and require further medical guidance, in light of the recent holding in Correia. As the previous examination report did not fully satisfy the requirements of Correia and 38 C.F.R. § 4.59, a new examination is necessary to decide the claim. 

At the VA examination of October 17, 2017, the Veteran complained of pain and swelling, aggravated by prolonged standing, running, and prolonged walking. It was indicated that the Veteran had an ankle brace for support. Range of motion studies of the left ankle showed dorsiflexion of 5 degrees and plantar flexion of 45 degrees. Pain was noted on examination, but did not result in functional loss. There was no pain on weight-bearing or non-weight bearing. There was no evidence of pain on passive range of motion. There was no evidence of additional loss of function or range of motion after repetitive testing. There was no evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. There was objective evidence of crepitus. There were no reports of flares. The examiner stated that he was unable to say without mere speculation whether pain, weakness, fatigability, or incoordination significantly limit functional ability with repeated use over a period of time because the examination was not conducted under these conditions. There was no evidence of ankyloses, instability, or dislocation noted.

The Court recently issued an opinion addressing the precise question of whether a VA examiner is permitted to decline to offer an estimate as to additional functional loss during flare-ups if the veteran is not undergoing a flare-up at the time of the examination. In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that the Board may accept a VA examiner's assertion that he or she cannot offer such an opinion without resort to speculation only after it determines that the examiner's conclusion is not based on the absence of procurable information or on a particular examiner's shortcomings or general aversion to offering an opinion on issues not directly observed. It must be clear that such an opinion is not procurable based on a lack of knowledge among the "medical community at large" and not merely on a lack of expertise, insufficient information, or unprocured testing on the part of the specific examiner. 

The October 2017 VA examination report is therefore incomplete and requires clarification. The Board will again remand this claim to obtain an opinion that either attempts to estimate additional functional impairment on flare-up or provides a satisfactory rationale for why such an estimate is not possible.

In light of the foregoing, remand for additional examinations that comply with 38 C.F.R. § 4.59, Correia v. McDonald, and Sharp v. Shulkin is required.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should ask the Veteran to identify the provider(s) of any and all evaluations and/or treatment he has received for the left ankle and provide authorizations for VA to obtain records of any such private treatment. The AOJ should obtain for the record complete clinical records of all pertinent evaluations and/or treatment (records of which are not already association with the record) from the providers identified. If a private provider does not respond to the AOJ's request for identified records sought, the Veteran must be so notified, and reminded that ultimately it is his responsibility to ensure that private treatment records are received.

2. After instruction (1) is completed, the AOJ should arrange for an orthopedic examination of the Veteran to determine the level of impairment due to his service-connected left ankle disability. 

**The claims file and a copy of this Remand must be made available to and reviewed by the examiner in conjunction with the examination. The examiner should note in the examination report that the claims folder and the Remand have been reviewed.

**All studies and tests needed to ascertain the status of the service-connected left ankle disability, to include all indicated tests and studies to include x-ray examination and diagnostic imaging studies, if deemed necessary, should be performed and written interpretation of such should be associated with the examination report.

**Based on the examination of the Veteran, and review of the record, the examiner should fully describe the functional effects of the Veteran's service-connected left ankle disability on his activities of daily living.

**In particular, the examiner should describe what types of activities would be limited because of the service-connected left ankle disability and what types of activities would not be limited (if any), and whether any limitation on activities is likely to be permanent.

**The examiner should record the pertinent medical complaints, symptoms, and clinical findings regarding the service-connected left ankle disability.

**The examiner should describe, in degrees of excursion, active and passive ranges of motion for left ankle, as well on weight-bearing and non-weight bearing, as demonstrated on examination; and this determination should be expressed in terms of the degrees of excursion in extension and flexion. If the examiner is unable to conduct any aspect of the required testing, he or she should explain why that is so.

**With respect to the Veteran's subjective complaints of pain, the examiner is asked to comment on whether pain is visibly manifested on range of motion testing (and during any other types of movement/use) of the left ankle, and if so, at what point (expressed in degrees of excursion in extension and/or flexion, if possible) such pain is elicited during such testing.

**The examiner is asked to comment on whether the Veteran's subjective complaints regarding any pertinent left ankle symptoms are consistent with the clinical data/objective findings.

**The examiner is asked to comment on whether pain limits range of motion of the left ankle during flare-ups and/or when the left ankle joint is used repeatedly over a period of time; and this determination, if possible, should be expressed in terms of any additional limitation (in the degrees of excursion in extension and/or flexion) of the left ankle due to pain on use and/or during flare ups.

**The examiner is asked to comment on whether there would be additional functional impairment on repeated use or during flare-ups (if the Veteran describes flare-ups). The examiner is asked to assess OR ESTIMATE the additional functional impairment on repeated use and/or during flare-ups in terms of any additional limitation (in the degrees of excursion in extension and/or flexion) of the left ankle.

**The examiner should identify the presence, or absence of ankylosis of the left ankle. 

**If the severity of the manifestation cannot be quantified, the examiner should explain why that is so.

A detailed explanation (rationale) is requested for all opinions provided, citing supporting clinical data and/or medical literature, as appropriate. (By law, the Board is not permitted to rely on any conclusion that is not supported by a thorough explanation. Providing an opinion or conclusion without a thorough explanation will delay processing of the claim and may also result in a clarification being requested).

3. After the above development has been completed, review the file and ensure that all development sought in this REMAND is completed. Arrange for any further development indicated by the results of the development requested above, and then re-adjudicate the claims. If benefits sought on appeal remain denied, supply the Veteran and his representative with a supplemental statement of the case and allow an appropriate period of time for response. Thereafter, the case should be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).