﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/27/19

DOCKET NO. 190131-4230
DATE: August 27, 2019

ORDER

Entitlement to service connection for bilateral hearing loss is denied. 

REMANDED

Entitlement to a disability rating in excess of 10 percent for left knee instability is remanded.

Entitlement to a disability rating in excess of 10 percent for residuals of a left knee meniscal tear is remanded.

Entitlement to service connection for a right knee condition is remanded.

FINDING OF FACT

The preponderance of the evidence of record is against finding that the Veteran has, or has had at any time during the appeal, a diagnosis of a bilateral hearing loss for VA compensation purposes.

CONCLUSION OF LAW

The criteria for entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C. § § 1101, 1110, 5107(b) (2012); 38 C.F.R. § § 3.102, 3.303, 3.307, 3.309, 3.385 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the Army from September 1987 to November 1988.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a December 2018 rating decision of the VA Regional Office (RO) in Columbia, South Carolina (Agency of Original Jurisdiction (AOJ)).

As an initial matter, on August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law, which went into effect in February 2019, creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. 

In August 2018, VA received notice that the Veteran chose to participate in VA’s test program, the Rapid Appeals Modernization Program (RAMP). The Board is honoring his choice and, accordingly, this decision has been written consistent with the new AMA framework. 

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the December 2018 RAMP rating decision considered the evidence as of the date VA received the RAMP election form. He timely appealed this RAMP rating decision to the Board and did not request additional time to submit evidence, electing for a Direct Review. 

1. Entitlement to service connection for bilateral hearing loss.

Service connection may be granted for a current disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). The requirement that a current disability exist is satisfied if the claimant had a disability at the time the claim for VA disability compensation was filed or during the pendency of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. 38 U.S.C. § 1154(a); Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006).

The Veteran contends that he has bilateral hearing loss as a result of his exposure to loud noises during his active duty service. While in the Army, the Veteran’s military occupational specialty was as an infantryman. He explains that he was subjected to mortar fire and noise from small arms fire. Following the military, he worked as a construction company owner/operator and a trucking company owner. 

The evidence of record does not support a finding of bilateral hearing loss by VA standards. A VA examination was performed in connection to this claim in September 2013; pure tone thresholds, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 15 15 15 25

LEFT 20 15 20 15 20

The average pure tone threshold for each ear was 18. Speech audiometry revealed speech recognition ability of 98 percent in his right ear. However, the examiner was unable to accurately assess speech discrimination for the Veteran’s left ear, stating, “Veteran did not respond to words correctly in the left ear at several supra threshold levels even with repeat instruction. This examiner believes the left ear responses were not the Veteran’s best effort as he was able to respond to words correctly at 15 dB in the left ear.” 

Nonetheless, these readings do not rise to the level of bilateral hearing loss disability under the provisions of 38 C.F.R. § 3.385. There is no competent evidence to the contrary, i.e., there is no evidence that the Veteran has hearing loss as defined under 38 C.F.R. § 3.385, and there is no competent evidence linking such a disorder to the claimant’s active duty service. Because a bilateral hearing loss disability as defined by 38 C.F.R. § 3.385 was not demonstrated at the VA examination or by other evidence of record available at the time of the prior decision, the Board must deny the Veteran’s claim for entitlement to service connection for bilateral hearing loss. 

REASONS FOR REMAND

1. Entitlement to a disability rating in excess of 10 percent for left knee instability is remanded.

2. Entitlement to a disability rating in excess of 10 percent for residuals of a left knee meniscal tear is remanded.

The Veteran is presently 10 percent service-connected for left knee instability and 10 percent for service-connected residuals of a left knee meniscal tear. He contends that his left knee disability warrants ratings higher than 10 percent for each distinct condition. During his most recent VA examination conducted in July 2016, he reported that his knee experiences flare ups worse in the morning and it takes him a while to “get moving.” He also experiences flare ups in his knee when kneeling, climbing, bearing weight, or standing for an extended period of time. The examiner who conducted the July 2016 examination did not attest to whether pain, weakness, fatigability, or incoordination significantly limited functional ability with flare ups, noting that the Veteran was not experiencing a flare up and thus, she was unable to formulate an opinion without resort to speculation. See Deluca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

The opinion provided in this examination report does not comply with current legal requirements. The United States Court of Appeals for Veterans’ Claims (Court) has recently made clear that such remarks made concerning flare-ups, without more, renders an examination inadequate. See Sharp v. Shulkin, 29 Vet. App. 26 (2017). As the Court explained in Sharp, “the VA Clinician’s Guide makes explicit what DeLuca clearly implied: it instructs examiners when evaluating certain musculoskeletal conditions to obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the Veterans themselves.” Id. at 6. “Even when the claimant is not experiencing a flare-up at the time of the examination, a VA examiner must elicit relevant information as to the Veteran’s flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the Veteran’s functional loss due to flares based on all the evidence of record-including the Veteran’s lay information-or explain why [he or] she could not do so.” Id. The Board must therefore remand to obtain an examination that complies with the directives set out in Sharp.

Furthermore, subsequent to the July 2016 VA examination, the Court in Correia v. McDonald, 28 Vet. App. 158 (2016) held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. Thus, the Court’s holding in Correia establishes additional requirements that must be met prior to finding that a VA examination is adequate. This is a pre-decisional duty to assist error.

3. Entitlement to service connection for a right knee condition is remanded.

As with the Veteran’s left knee, the Veteran underwent a VA examination for his right knee in September 2013 in connection with his claim for entitlement to service connection. At that time, the examiner stated, “gradual onset [of] bilateral knee pain over course of duty due to repetitive overuse injuries from heavy [physical training] and field exercises…has had progressively increasing pain ever since.” A different physician provided an opinion after this examination, stating there was no event on active duty that would result in aggravation. A third medical professional then provided a clarification for this opinion, opining it is less likely than not that the Veteran had either a progression of his pre-existing right knee condition or a separate disability with initial onset on active duty. She rationalized there was no actual X-ray report in 1987, only that his knee was within normal limits which could “easily miss subtle changes such as minimal joint space narrowing referenced on 1988 x-rays, which was at least as likely as not already present when [the] Veteran was cleared for duty in 1987.” 

Each of the medical professionals that assessed the Veteran’s right knee condition noted that his service treatment records documented his previous right knee surgeries. However, while there may not be a specific event that caused injury to the Veteran’s right knee, the physicians seemingly neglect to take into consideration the repetitive overuse injuries from physical training and field exercises noted by the examiner to have caused aggravation to his left knee. This examination is inadequate and as such, constitutes a pre-decisional duty to assist error, as the Board has not provided the Veteran with an adequate VA examination. 

The matters are REMANDED for the following action:

1. The AOJ shall associate the Veteran’s VA medical treatment records, if they exist, with his file.

2. Ask the Veteran to complete a VA Form 21-4142 for any private treatment providers that have treated him for any left or right knee disability. Thereafter, obtain and associate with the claims folder any private treatment records identified.

3. Then, afford the Veteran an orthopedic examination to determine the current severity of his left knee.

In order to comply with Sharp v. Shulkin, 29 Vet. App. 26 (2017), the examiner is asked to describe whether pain, weakness, or incoordination significantly limits functional ability during flares or repetitive use, and if so, the examiner must estimate range of motion during flares. If the examination does not take place during a flare, the examiner should have the Veteran describe and/or demonstrate the extent of motion loss during flares or repetitive use and provide the extent of motion loss described in terms of degrees. If there is no pain and/or no limitation of function, such facts must be noted in the report.

Also, in order to comply with the Court’s decision in Correia v. McDonald, 28 Vet. App. 158 (2016), the VA examination must include range of motion testing in the following areas:

• Active motion;

• Passive motion;

• Weight-bearing; and

• Nonweight-bearing.

If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. The VA examiner should provide a complete rationale for any opinions provided.

4. The Veteran should be afforded an appropriate VA examination in order to determine the current nature and etiology of his right knee condition. The claims file must be made available to and be reviewed by the examiner.

The examiner should accept as fact that the Veteran had a pre-existing right knee condition, status post lateral meniscus tear, prior to entering active duty service. 

The examiner should specifically indicate whether the Veteran’s right knee condition was aggravated beyond the normal progress of the disorder during service with consideration of repetitive overuse injuries from physical training and field exercises. 

The examiner should consider the following:

• the Veteran’s September 2013 VA examination;

• the October 2013 opinion and addendum opinion; 

• the Veteran’s service treatment records; and 

• the letter provided by Dr. D.J. in September 2015.

The examiner must provide all findings, along with a complete rationale for his or her opinion(s) in the examination report. If any of the above requested opinions cannot be made without resort to speculation, the examiner must state this and provide a rationale for such conclusion. 

 

T. MAINELLI

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Victoria A. Narducci, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.