http://www.va.gov/vetapp16/Files5/1639947.txt

Citation Nr: 1639947 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 13-21 754 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUES

1. Entitlement to a higher initial rating for degenerative disc disease at L5-S1, currently evaluated as 20 percent disabling (back disability).

2. Entitlement to a higher initial rating for left shoulder degenerative arthritis, currently evaluated as 10 percent disabling (left shoulder disability).

3. Entitlement to a higher initial rating for right shoulder degenerative arthritis, currently evaluated as 10 percent disabling (right shoulder disability)

4. Entitlement to an extension of a temporary total disability rating of the lumbar spine due to convalescence under 38 C.F.R. § 4.30.

5. Entitlement to a total rating based upon individual unemployability due to service-connected disabilities (TDIU).

ATTORNEY FOR THE BOARD

D. J. Drucker, Counsel

INTRODUCTION

The Veteran had active military service from July 1989 to August 1989 and from March 1992 to June 2010.

This case initially came to the Board of Veterans' Appeals (Board) on appeal from January and February 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, that in pertinent part, granted service connection for bilateral shoulder and back disabilities, respectively, that were assigned the above-listed initial ratings from June 24, 2010. A January 2012 rating decision granted a temporary total rating for the Veteran's back disability under the provisions of 38 C.F.R. § 4.30 from May 13, 2011 to June 30, 2011 after which the previously assigned 20 percent rating was resumed on July 1, 2011.

In a May 2015 decision, the Board granted an initial 50 percent rating for the Veteran's psychiatric disability and an initial 30 percent rating for his cluster headaches, and denied an initial rating higher than 30 percent for left lower extremity radiculopathy and peripheral neuropathy, and initial compensable ratings for right foot peripheral neuropathy and residual scar of the lumbar spine, and an effective date prior to May 13, 2011 for a temporary total rating for the lumbar spine under 38 C.F.R. § 4.30. At that time, the Board remanded the Veteran's claims for increased initial ratings for his back and bilateral shoulder disabilities and an extension of the temporary total rating for low back due to convalescence to the Agency of Original Jurisdiction (AOJ) for further development.

The May 2015 remand noted that, in a January 2012 notice of disagreement (NOD), the Veteran argued that the temporary total rating for his low back under 38 C.F.R. § 4.30 should extend beyond July 1, 2011, but a statement of the case was not issued. See Manlincon v. West, 12 Vet. App. 238 (1999). The Board's erroneously directed that a statement of the case be issued regarding a different issue (depression). An April 2016 supplemental statement of the case (SSOC) addressed the matter of an extension of the temporary total rating beyond July 1, 2011 in the discussion of the increased rating for the back disability, thus ensuring that there was substantial compliance with the Board's remand. The question of an extension of the temporary total rating is part and parcel of the Veteran's increased initial rating claim.

An April 2016 rating decision, in pertinent part, effectuated the initial 30 percent rating for cluster headaches.

A claim of entitlement to a TDIU is part of an initial rating claim when such claim is raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). Pursuant to Rice, the issue of entitlement to a TDIU is currently before the Board since the issue of unemployability is raised by the record (7/13/15 VBMS VA 21-0820 Report of General Information; 10/27/11 VBMS Correspondence; 6/17/11 Correspondence).

The Veteran was previously represented in his case by The American Legion (6/29/12 VBMS VA-21-22 Appointment of Veterans Service Organization as Claimant's Representative). In September 2014, he revoked his power attorney to that organization and stated that he wished to represent himself (11/19/14 VBMS VA 21-4138 Statement in Support of Claim). In April 2016, he reiterated that he wished to represent himself in his appeal (4/21/16 VBMS VA 21-4138). As such, the Board recognizes that the Veteran proceeds in his appeal pro se.

The April 2016 rating decision assigned a 30 percent rating for cluster headaches. The Veteran submitted a timely NOD as to the assigned rating for his headache disability that month (4/25/16 VBMS Notice of Disagreement (NOD)). The Board declines limited jurisdiction of this issue at this time as the April 2016 NOD has been logged into VBMS and VACOLS. 

The appeal is REMANDED to the AOJ. VA will notify the appellant if further action is required.

REMAND

Shoulder and Back Disabilities

The Veteran underwent VA examinations in April 2016. The examinations do not comport to the requirements as set forth in Correia v. McDonald, 28 Vet. App. 158 (2016). This case involved determining the proper interpretation of the final sentence of 38 C.F.R. § 4.59 (2015), that reads, "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." 

The United States Court of Appeals for Veterans Claims (Court) found the final sentence of § 4.59 to be ambiguous because the regulation, considered as a whole, is meant to guide adjudicators in determining the proper level of disability of joints, and if the range of motion testing listed in the last sentence is not required, it is unclear how an adjudicator could adequately rate a claimant's joint disability and account for painful motion. Compelled by § 4.59's place in the regulatory scheme (it preceded the disability rating schedule), the Court held that the final sentence of § 4.59 creates a requirement that certain range of motion testing be conducted whenever possible in cases of joint disabilities. Correia, 28 Vet. App. at 168. Specifically, the court stated that "to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of § 4.59." Id. at 169-170. 

VA has interpreted the Court's holding to imply that all range of motion testing must include active motion, passive motion, weight-bearing motion, and nonweight-bearing motion, and must be compared to the opposite joint, when possible (opposite joint testing is only applicable where there is an opposite joint and, thus, excludes spine claims; it also excludes opposite joint testing when the opposite joint is "damaged," meaning it has a disorder that would make it abnormal). In a footnote "...the Court accepts that whether upper extremities are or can be weight-bearing is a medical question that it is not competent to answer." Id. at 168 n7. The 2016 examiner noted that the Veteran was precluded from overhead work with his arms, and limited to lifting, pushing, or pulling no more than 25 pounds (4/13/16 VBMS C&P Exam Shoulder & Arm, p. 8). 

Nonetheless, new examinations are warranted, and the examiner should attempt to ascertain passive motion at the time of the December 2010 and January and July 2011 prior examinations (keeping in mind that range of motion of the lumbar spine was contradindicated at the July 2011 examination due to the Veteran's May 2011 lumbar spine surgery and he underwent right shoulder surgery in May 2013) (5/27/11 VBMS Medical Treatment Record Non-Government Facility; 10/28/14 VBMS Medical Treatment Record Non Government Facility; 2/3/11 VBMS Medical Treatment Record Government Facility).

The Board will defer consideration of the issue of an extension of his temporary total rating for his lumbar spine beyond July 1, 2011 as it is intertwined with his claim for an increased initial rating claim for his back disability.

The Veteran requested that VA obtain medical records regarding his treatment by Triangle Orthopedics since 2002 for his lumbar spine disability (5/20/11 VBMS VA 21-4142 Authorization for Release of Information). The claims file contains his March 2011 lumbar spine evaluations and May 2011 lumbar surgery records (4/27/11 VBMS Correspondence, pp. 2, 5, 6, 10; 5/27/11 VBMS Medical Treatment Record Non Government Facility). A March 4, 2011 record describes the Veteran as a "new patient", suggesting there are no earlier medical records (3/8/11 VBMS Medical Treatment Record Non Government Facility, p. 16). It is unclear if there are later-dated records regarding the Veteran's treatment by this medical provider

In June 2011, the RO requested the Veteran's medical records from Triangle Orthopedics (6/13/11 VBMS Map D Development Letter; 6/20/11 VBMS Third Party Correspondence). There was no response to the request. Another effort should be made to obtain records of his treatment prior to March 2011 and after May 2011.

TDIU

In June and October 2011, the Veteran reported that he was unable to find any type of work since his discharge and, in July 2015, he reported that he was out of work, although it is not entirely clear if this was due to his service-connected disabilities (6/17/11 VBMS Correspondence; 10/27/11 VBMS Correspondence; 7/13/15 VBMS VA 21-0820 Report of General Information). The Veteran should be requested to complete a VA Form 21-8940, Application for Increased Compensation Based on Unemployability.

Medical evidence should be obtained regarding how the Veteran's service-connected disabilities impact employment.

Accordingly, the case is REMANDED for the following actions:

1. Request that the Veteran complete a VA Form 21-8940, Application for Increased Compensation Based on Unemployability.

2. Request records of the Veteran's treatment of his lumbar spine by Triangle Orthopedics, after obtain any needed authorization, from 2002 to March 2011 and since May 2011. If any requested records cannot be obtained, the appellant must be notified of the attempts made and of what additional actions will be taken with regard to his claim.

3. After completing the development requested above, schedule the Veteran for a new VA orthopedic examination of his lumbar spine and shoulders, that measures both active and passive range of motion and in weight bearing and non-weight bearing. 

a. The examiner should report at what point (in degrees) pain is elicited as well as whether there is any other functional loss due to weakened movement, excess fatigability or incoordination. These determinations must be expressed in terms of the additional limitation of motion in approximate degrees due to each functional factor that is present. 

b. The examiner should report on whether there is functional loss due to limited strength, speed, coordination, or endurance. 

c. The examiner should also estimate any additional loss of function during periods of flare-up and when used repeatedly over a period of time, expressed in degrees of lost motion. Such estimate can be based on the Veteran's description of his limitations during such periods, so that an estimate should be provided, if at all possible, even in the absence of direct observation by the examiner. 

d. If the examiner is unable to conduct any of the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. 

e. The examiner is advised that the Veteran is competent to report limitation of motion during flare-ups.

f. The examiner is asked to estimate what the Veteran's passive range of motion would have been at the time of the prior examinations in December 2010 and January and July 2011. If this cannot be done, the examiner should explain why and further indicate how far back in time the current findings could be deemed relevant. 

4. Request that a Veteran's Health Administration Vocational Rehabilitation Specialist conduct a vocational assessment to evaluate the impact of the Veteran's service-connected disabilities on his ability to function in an occupational setting. The claims file, to include this remand should be reviewed by the specialist in order to become familiar with his pertinent medical history. 

The specialist should assess the functional impairment caused by the Veteran's service-connected disabilities (psychiatric, lumbar spine, left and right shoulder, obstructive sleep apnea, cluster headaches, left lower extremity radiculopathy and peripheral neuropathy, right foot peripheral neuropathy, and erectile dysfunction) on his ability to work. The examiner should give consideration to the Veteran's level of education, special training, and previous work experience, but should not consider his age or the impairment caused by his nonservice-connected disabilities. As appropriate, the specialist should identify (provide examples of) the types of employment that would be inconsistent with the Veteran's service-connected disabilities (in light of her education and work experience) and any types of employment that would remain feasible despite the service-connected disabilities..

A comprehensive rationale for all opinions expressed must be provided in the report. 

5. If the benefits on appeal remains denied, issue a SSOC (that includes consideration of a TDIU if that benefit is denied). Thereafter, the case should be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
PAUL SORISIO
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits. 38 C.F.R. § 20.1100(b) (2015).