Citation Nr: 1811318 
Decision Date: 02/22/18 Archive Date: 03/06/18

DOCKET NO. 97-34 060 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for service-connected lumbosacral strain.

2. Entitlement to service connection for posttraumatic stress disorder (PTSD).

3. Entitlement to service connection for psychiatric disability other than PTSD, to include depressive disorder.

4. Entitlement to service connection for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Kenneth L. LaVan, Attorney



WITNESSES AT HEARING ON APPEAL

Appellant and his spouse


ATTORNEY FOR THE BOARD

Michael Sanford, Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from December 1969 to December 1971. 

This appeal to the Board of Veterans' Appeals (Board) arose from a July 1996 decision in which the RO, inter alia, granted service connection and assigned an initial zero percent (noncompensable) rating for lumbosacral strain, effective September 8, 1995; and denied service connection for PTSD and for bilateral hearing loss. The Veteran filed a notice of disagreement (NOD) with the assigned rating and with the denials of service connection in February 1997.

In August 1997, the Veteran and his wife testified during a hearing before RO personnel; a transcript of that hearing is of record.

In October 1997, the RO increased the rating for lumbosacral strain to 10 percent, effective September 8, 1995. The RO issued statements of the case (SOCs) in October 1997 and in December 1997, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to Board of Veterans' Appeals) regarding the back and PTSD issues in December 1997. Correspondence received from the Veteran in January 1998 has also been accepted as a substantive appeal, in lieu of a VA Form 9, with respect to the bilateral hearing loss claim..

In June 2005, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record.

Because the Veteran had disagreed with the initial rating assigned following the grant of service connection for his lumbosacral strain, the Board characterized this issue on appeal in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disability).

In September 2005, March 2010, and December 2012, the Board remanded these matters for further action, to include additional development of the evidence. After accomplishing further action, the AOJ continued to deny the claims (as reflected, most recently, in a May 2016 supplemental SOC (SSOC)) and returned these matters to the Board for further appellate consideration.

While the Veteran previously had a paper claims file, this appeal is now being processed utilizing the paperless, electronic Veterans Benefits Management System and Virtual VA (Legacy Content Manager) claims processing systems. All records have been reviewed.

For reasons expressed below, the claims on appeal are, again, being remanded to the AOJ. VA will notify the Veteran when further action, on his part, is required.


REMAND

Unfortunately, the Board finds that further action in this appeal is warranted, even though such will, regrettably, further delay an appellate decision on this matter.

In March 2010, the Board remanded the claims for service connection for bilateral hearing loss, PTSD, and an acquired psychiatric disorder to afford the Veteran VA examinations to determine the nature and etiology of those disorders. The Veteran was scheduled for those examinations in November 2011 and failed to attend the scheduled examinations.

Following a decision review officer (DRO) conference in August 2015, the AOJ again attempted to schedule the Veteran for VA examinations in connection with g his claims for service connection for bilateral hearing loss, PTSD and an acquired psychiatric disorder other than PTSD. A "Compensation and Pension Exam Inquiry" form indicates that the examinations were cancelled on October 28, 2015, because the "Veteran failed to RSVP." In the May 2016 SSOC, it was noted that the Veteran failed to report for the VA examinations scheduled in October 2015.

Initially, the Board points out that there is no legal provision regarding the establishment of an "RSVP" for purposes of scheduling required examinations. Instead, written notice should be furnished to the Veteran as to the time, date, and location of the scheduled examinations. Moreover, despite the indication in the 2016 SSOC, it is apparent that the Veteran was never actually scheduled for any examination; he merely did not RSVP for the examinations. Additionally, the written request dated October 2015 for the Veteran to RSVP for the examinations was mailed to the Veteran's street address in Clarkesville, Georgia. However, the record detailing that the examinations were cancelled noted that the address provided by the Veterans Benefits Administration (VBA) and the Veterans Health Administration (VHA) differed and a P.O. Box in Clarkesville, Georgia was listed. Moreover, all other adjudicative documents have been mailed to the Veteran's custodian at the P.O. Box in Gainesville, Georgia. The Board also notes that other letters were mailed to another address in Clarkesville, Georgia. See, e.g., May 2015 Letter to Veteran.

Under these circumstances, the Board finds that, in the interests of due process, further remand of the claims for service connection for bilateral hearing loss, PTSD and an acquired psychiatric disorder, for the AOJ to again arrange for the Veteran to undergo the previously-requested examinations, is warranted. Indeed, it is unclear whether the Veteran received notice of the AOJ's attempts to reschedule the examinations requested in the March 2010 remand. Accordingly, on remand, the AOJ should take all necessary action to confirm the Veteran's current address and, thereafter, to again arrange for him to undergo the VA examinations requested in the March 2010 remand.

As regards the claim for a higher rating, the Veteran was last afforded a VA examination to obtain information as to the severity of his lumbar spine disability in March 2013. Subsequently, the United States Court of Appeals for Veterans Claims (Court) issued a decision in Correia v. McDonald, 28 Vet. App. 158 (2016), a case involving evaluation of a knee disability. In Correia, the Court held that the final sentence of 38 C.F.R. § 4.59 requires that VA musculoskeletal examinations include joint testing, "wherever possible," for pain on both active and passive motion, and in weight-bearing and non weight-bearing (and, if possible, with range of motion measurements of the opposite undamaged joint). See Correia, 28 Vet. App. at 168-70.

On the March 2013 examination, range of motion testing on passive motion and on weightbearing and non weight-bearing was not accomplished. Such information, as well as other information responsive to 38 C.F.R. § 4.59 and Correia, is needed to properly evaluate the Veteran's lumbar spine disability.

Hence, in light of the above, the AOJ should arrange for the Veteran to undergo VA examinations of the lumbar spine, as well as bilateral hearing loss, PTSD and an acquired psychiatric disorder, by (an) appropriate medical professional(s). 

The Veteran is hereby advised that failure to report to the scheduled examination, without good cause, may result in denial of the claim. See 38 C.F.R. § 3.655 (2017). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. 

Prior to undertaking action responsive to the above, to ensure that all due process requirements are met, and the record is complete, the AOJ should give the Veteran another opportunity to provide additional information and/or evidence pertinent to the remaining claim on appeal, explaining that he has a full one-year period for response. See 38 U.S.C. § 5103(b)(1) (2012); but see also 38 U.S.C. § 5103(b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). 

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2017).

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. § 3.159 (2017). However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the claims on appeal. Adjudication of the higher rating claim should include consideration of whether "staged rating" of the disability-assignment of higher ratings for distinct periods of time, based on the facts found-is appropriate. 

Accordingly, these matters are hereby REMANDED for the following action:

1. Undertake all necessary action to verify the Veteran's current mailing address (to include whether correspondence should be mailed to his custodian). All efforts to confirm his current address should be documented in the claims file.

2. Send to the Veteran and his attorney a letter requesting that the Veteran provide sufficient information, and if necessary, current authorization to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, all outstanding, pertinent, private (non-VA) records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

3. If the Veteran responds, obtain all identified records, following the procedures set forth in 38 C.F.R. § 3.159. All records and responses received should be associated with the file. If any records sought are not obtained, notify the Veteran and his representative of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo a VA mental disorders examination, by a psychiatrist or psychologist, to obtain medical information as to the nature and etiology of all acquired psychiatric disability(ies.).

The contents of the entire, electronic claims file (in VBMS and Virtual VA (Legacy Content Manager)), to include a complete copy of this REMAND, must be made available to the designated individual, and the examination report should include discussion of the Veteran's documented medical history and assertions.

All appropriate tests and studies (to include psychological testing, if deemed warranted) should be accomplished (with all results made available to the requesting examiner prior to the completion of his or her report) and all clinical findings should be reported in detail. 

If a diagnosis of PTSD is deemed appropriate, the examiner should specify how the diagnostic criteria are met, specifically identifying the verified in- service stressors underlying the diagnosis (noting that the occurrence of the Veteran's exposure to sniper and other numerous hostile attacks in Vietnam has been conceded), and comment upon the link between current symptomatology and the verified in-service stressors found to be established by the record.

If the Veteran is found to meet the diagnostic criteria for any other acquired psychiatric disorder(s) (to include depressive disorder), with respect to each such diagnosed disorder, the examiner should offer an opinion, consistent with sound medical principles, as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the disorder had its onset during or is otherwise medically related to the Veteran's military service, to include any stressful experience(s) therein.

In addressing the above, the mental health professional should specifically consider and discuss all in and post-service medical and other objective evidence. If lay assertions in any regard are discounted, the examiner should clearly so state, and explain why.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

5. Also, after all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA ENT examination, by an appropriate physician, to obtain medical information in connection with his claims for service connection for bilateral hearing loss.

The contents of the entire, electronic claims file (in VBMS and Virtual VA (Legacy Content Manager)), to include a complete copy of this REMAND, must be made available to the designated individual, and the examination report should include discussion of the Veteran's documented medical history and assertions.

All appropriate tests and studies (to include audiometric and speech discrimination (Maryland CNC) should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report) and all clinical findings should be reported in detail. 

Based on the results of audiometric testing, the physician should specifically indicate, with respect to each ear, whether the appellant currently has hearing each loss to an extent recognized as a disability for VA purposes (i.e., an auditory threshold in any of the frequencies 500, 1000, 2000, 3000 or 4000 hertz of 40 decibels or greater; or an auditory threshold for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 hertz of 26 decibels or greater; or speech recognition scores using the Maryland CNC test of less than 94 percent). 

Then, with respect to each diagnosed disability, the examiner should provide an opinion as whether it is at least as likely as not (i.e., there is a 50 percent or greater probability) that such disability is the result of injury or disease incurred or aggravated in service, to specifically include claimed in-service noise exposure.

In rendering the requested opinion, the physician should specifically consider and discuss all in and post-service medical and other objective evidence. If lay assertions in any regard are discounted, the examiner should clearly so state, and explain why.

All examination findings/testing results (if any), along with complete, clearly-stated rationale for the conclusions reached, must be provided.

6. Also, after all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA spine examination, by an appropriate medical professional, for evaluation of his service-connected lumbar spine disability.

The contents of the entire, electronic claims file (in VBMS and Virtual VA (Legacy Content Manager)), to include a complete copy of this REMAND, must be made available to the designated individual, and the examination report should include discussion of the Veteran's documented medical history and assertions.

All appropriate tests and studies should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report) and all clinical findings should be reported in detail. 

The examiner should conduct range of motion testing of the thoracolumbar spine (expressed in degrees) in active motion, passive motion, weight-bearing, and non-weight-bearing (as appropriate). If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly so state and explain why.

The examiner should render specific findings as to whether, during such testing there is objective evidence of pain on motion, weakness, excess fatigability, and/or incoordination. If pain on motion is observed, the examiner should indicate the point at which pain begins.

Also, if the Veteran is not examined during a flare up, the examiner should indicate whether, and to what extent, the Veteran experiences likely functional loss of the thoracolumbar spine due to pain and/or any of the other symptoms noted above during flare-ups and/or with repeated use; to the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limited motion.

Further, the examiner should indicate whether the Veteran has any ankylosis of the lumbar spine; and, if so, the extent of any such ankylosis, and whether the ankylosis is favorable or unfavorable.

With respect to neurological manifestations of lumbar spine disability, the examiner should assess the severity of already service-connected radiculopathy of the sciatic nerve of the right lower extremity.

The examiner should also identify any additional chronic neurological manifestation(s) of the service-connected lumbar spine disability; and for each such identified additional manifestation, should indicate whether such manifestation constitutes a separately ratable disability and, if so, should provide an assessment of the severity of such disability.

Further, considering all orthopedic and neurological manifestations of the lumbar spine disability, the examiner should render findings appropriate for evaluating the disability as intervertebral disc syndrome (IVDS), commenting as to the total duration and frequency of any incapacitating episodes (defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician) over the past 12 months: (a) at least one week, but less than 2 weeks; (b) at least two weeks but less than 4 weeks; (c) at least 4 weeks but less than 6 weeks; or (d) at least 6 weeks.

All examination findings/testing results, along with complete rationale for the conclusions reached, must be provided.

7. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

8. After completing the requested actions, and any additional notification and/or development deemed warranted, adjudicate the claims on appeal in light of all pertinent evidence (to include all evidence added to the VBMS and/or Virtual VA (Legacy Content Manager) file(s) since the last adjudication) and legal authority (to include, with respect to the higher rating claim, whether staged rating of the lumbar spine disability is appropriate)..

10. If the benefit sought on appeal remains denied, furnish to the Veteran and his representative an SSOC that includes clear reasons and bases for all determinations, and afford them an appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether any benefit requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012). 



_________________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (2012), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2017).