Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 200423-80226
DATE: July 14, 2021

ORDER

Entitlement to an effective date of January 1, 2008 for a total disability rating for compensation based on individual unemployability due to service-connected disabilities (TDIU) is granted.

REMANDED

Entitlement to a rating in excess of 20 percent for residuals, status-post severe left ankle sprain is remanded.

FINDING OF FACT

Resolving all reasonable doubt in favor of the Veteran, he was unable to obtain or maintain gainful employment due to his service-connected disabilities since January 1, 2008.

CONCLUSION OF LAW

The criteria for entitlement to an effective date prior of January 1, 2008 for the grant of TDIU have been met. 38 U.S.C. §§ 5110, 7105; 38 C.F.R. §§ 3.1, 3.104, 3.155, 3.400, 20.305.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active duty from February 1984 to August 1988.

This matter comes before the Board of Veterans' Appeals (Board) from a February 2020 rating decision of a Regional Office (RO) of the Department of Veterans Affairs (VA). The rating decision constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies.

In October 2019, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR), and requested review of a September 2019 rating decision that granted entitlement to a TDIU. In February 2020, the agency of original jurisdiction (AOJ) issued the HLR decision on appeal, which considered the evidence of record at the time of the initial rating decision. Therefore, the Board may only consider the evidence of record at the time of the initial rating decision.

In the April 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. 38 C.F.R. § 20.301.

1. TDIU Prior to October 4, 2018

The Veteran asserts that a TDIU rating is warranted in his case for the period prior to October 4, 2018, as he was unemployable due to service-connected disabilities before that date. The Veteran is currently in receipt of TDIU, effective October 4, 2018.

To establish a total disability rating based on individual unemployability, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340. Substantially gainful employment is defined as work which is more than marginal and which permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991). In Faust v. West, 13 Vet. App. 342 (2000), the U.S. Court of Veterans Appeals (now the U.S. Court of Appeals for Veterans Claims) (Court) defined substantially gainful employment as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income."

In Moore, the Court discussed the meaning of "substantially gainful employment." In this context, it noted the following standard announced by the United States Federal Court of Appeals in Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975): "It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant." Id. at 359.

VA will grant TDIU when the evidence shows that the veteran is precluded, by reason of service-connected disabilities, from obtaining and maintaining a substantially gainful occupation consistent with education and occupational experience, without regard to advancing age. 38 C.F.R. §§ 3.340, 3.341, 4.16 (2019).

Under the applicable regulations, TDIU may be granted only when it is established that the service-connected disabilities are so severe, standing alone, as to prevent the obtaining and maintaining of substantially gainful employment. If there is only one such disability, this disability shall be ratable at 60 percent or more. If there are two or more service-connected disabilities, there must be at least one disability rated 40 percent or more, and sufficient additional disabilities to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16 (a) (2019).

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable; (2) Disabilities resulting from common etiology or a single accident; (3) Disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) Multiple injuries incurred in action; or (5) Multiple disabilities incurred as a prisoner of war. Id.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a).

The Veteran is presently service-connected for headaches, at 50 percent disabling, effective January 7, 2019 (noncompensable from December 30, 2003; 10 percent disabling, effective July 23, 2008; and 30 percent disabling from March 21, 2016); residuals of mandible fracture (TMJ), at 40 percent disabling (noncompensable from December 30, 2003); lumbosacral strain, at 20 percent disabling, effective December 30, 2003; left ankle sprain residuals, at 20 percent disabling, effective December 30, 2003; bilateral lower extremity radiculopathy, at 20 percent disabling, effective October 4, 2018; left knee strain and patellofemoral syndrome, at 10 percent disabling, effective December 30, 2003; sinusitis, at 10 percent disabling, effective September 13, 2004; gastroesophageal reflux disease, at 10 percent disabling, effective December 30, 2003; and hernia residuals, rated noncompensable, effective December 30, 2003.

The Veteran's combined ratings were 50 percent disabled, effective December 30, 2003; 70 percent disabled, effective August 19, 2005; 80 percent disabled, effective July 23, 2008; and 90 percent disabled, effective October 4, 2018. The Veteran was granted TDIU effective October 4, 2018. 

A September 2019 rating decision granted TDIU with an effective date of October 4, 2018. See rating decision, September 25, 2019. It is not clear to the Board why that particular effective date was chosen by the AOJ. The Veteran met the schedular requirements for a TDIU rating prior to that date, in that essentially the same facts existed prior to October 4, 2018, supporting the grant for a TDIU, as explained below. Moreover, the record establishes that the Veteran has not been employed since December 21, 2007. 

The Veteran first filed a claim for TDIU on August 19, 2005. See claim, received by VA August 19, 2005. For the period effective August 19, 2005, the Veteran meets the schedular criteria for consideration of TDIU, as he had two or more service-connected disabilities, with at least one disability rated 40 percent or more (in his case, that disability being TMJ residuals), and sufficient additional disabilities to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). 

An October 2006 joints examination showed that the Veteran walked with a noticeable limp, stated that he was in constant severe pain from his left ankle, had an unstable left ankle, had frequent left ankle flare-ups, and used a cane and an ankle brace. See Joints Examination, October 19, 2006. The examiner that the Veteran reported being unable to work for multiple reasons, reasons which were not enumerated, but which the examiner opined were not related to the Veteran's service-connected left ankle condition.

The Veteran underwent a headaches examination in December 2006. See Headaches Examination, December 15, 2006. The examiner confirmed a diagnosis of chronic daily headaches, which were unchanged in their intensity, severity, or characteristics since the March 2004 neurological examination. The examiner opined that the headaches were considered chronic, but not prostrating, occurring on a daily basis (this was the same opinion as the one with which the March 2004 examination concluded).

The Veteran underwent an examination in July 2008. See Cranial Nerves Examination, July 23, 2008. The Veteran stated that he missed two work days a week as a result of his recurrent headaches, and that the headaches decreased his quality of life and activities of daily living. The Veteran reported that he was unemployed as a result of being laid off from his job due to a dominant hand injury. The Veteran's left ankle was evaluated at the same time. The Veteran stated that he had trouble standing or walking for longer than 10 or 15 minutes, and that his left ankle prevented him from engaging in recreational activities. The examiner opined that the Veteran's left ankle sprain residuals consisted of pain and decreased range of motion.

The Veteran underwent a dental examination in July 2008. See Dental and Oral Examination, July 30, 2008. The Veteran reported that he experienced persistent, unremitting left mandibular jaw pain, that he was unable to eat solid foods, and took a variety of pain medications for the condition. 

An October 2009 joints examination showed that the Veteran walked with a noticeable limp, stated that he was in constant severe pain from his left ankle, had an unstable left ankle, had frequent left ankle flare-ups, and used a cane and an ankle brace. See Joints Examination, October 20, 2009. The Veteran denied flare-ups or using a cane, crutches, or a brace. The examiner stated that the Veteran did not experience any issues with his activities of daily living due to the left ankle, that there was no tenderness, and no instability or dislocation. The examiner opined that the Veteran's left ankle should not interfere with his employability, either sedentary or manual in nature. 

The Veteran underwent a headache examination in January 2012. See Headaches Disability Benefits Questionnaire (DBQ), January 3, 2012. The Veteran reported a history of intermittent headaches. He related that he was currently unemployed after being laid off due to a hand injury. The Veteran stated that he missed two work days a week as a result of his recurrent headaches, and that the headaches decreased his quality of life and activities of daily living. The examiner noted that the Veteran did not experience characteristic prostrating attacks of migraine pain or non-migraine pain. The examiner opined that the Veteran's headaches impacted his ability to work, as when his headaches were severe, the Veteran was limited to sedentary activities only. 

The Veteran underwent a dental examination in January 2012. See Dental and Oral Conditions DBQ, January 3, 2012. The examiner opined that the Veteran's dental condition did not have an impact on his ability to work. 

The Veteran underwent an ankle examination in November 2013. See Ankle Conditions DBQ, November 1, 2013. The Veteran reported intermittent pain in his left ankle, he was unable to walk "much," and took three Vicodin per day for his ankle pain. His pain increased at night, as well with prolonged walking and standing. The Veteran reported flare-ups of the ankle which occurred with increased activity and walking, and resulted in the Veteran being "laid up all day" for two to three days due to pain. The examiner opined that the Veteran's left ankle condition did not have an impact on his ability to work.

The Veteran underwent a headaches examination in November 2013. See Headaches DBQ, November 1, 2013. The Veteran related that he was "always sleeping" as a way to deal with headaches, got daily headaches that lasted for four to five hours, experienced "very severe" constant pain that made him feel like his eyes and ears were "popping," and experienced pain that was "at least" 8/10 when awake. The examiner noted that, despite claiming that he experienced a headache at the examination, the Veteran had no objective signs of a headache and did not appear to be in discomfort. The examiner stated that the Veteran did not experience prostrating attacks of migraine headache pain or non-migraine headache pain. The Veteran told the examiner that he was unemployed, and that he was unable to work due to his headaches. The examiner opined that Veteran's headache condition impacted his ability to work, as the Veteran described almost constant chronic headaches that were relieved only with Excedrin and sleep. The examiner added that there was no documentation that the Veteran received ongoing treatment for headaches, and that other conditions such as chronic back pain, right arm pain, and complex regional pain syndrome affected his employability.

The Veteran underwent another dental examination in August 2014. See TMJ Conditions DBQ, August 7, 2014. The Veteran related that his TMJ pain has increased since 2013, that popping and clicking were still present, and that he did not receive any treatment for the condition. The examiner stated that the examination was within normal limits, with the exception of slight clicking and popping on opening. There were no objective signs of pain, but the Veteran stated that his jaw "shook" during repetitive testing. The Veteran reported flare-ups of pain during which he experienced "excruciating pain that sends chills or sharp pain through my body that's uncontrollable and lasts hours." The examiner opined that the Veteran's TMJ condition did not have an impact on his ability to work.

The Veteran underwent another left ankle examination in August 2014. See Ankle Conditions DBQ, August 7, 2014. The Veteran complained of left ankle pain "from time to time." The Veteran reported that the pain was worse on walking, but the examiner noted that the Veteran walked into the examination room normally and without any evidence of significant discomfort). The examiner opined that the Veteran's left ankle condition did not have an impact on his ability to work.

The Veteran also underwent a headaches examination in August 2014. See Headaches DBQ, August 7, 2014. The examiner confirmed a diagnosis of a headache condition. The Veteran stated that he often experienced headaches in the back of his neck. The examiner opined that the pain the Veteran described was suggestive of cervical spine issues rather than headaches. The examiner stated that the Veteran experienced non-headache symptoms associated with headaches, including sensitivity to light and sensitivity to sound, that his headaches lasted less than a day, and that a typical headache was pain in the back of the neck. The examiner stated that the Veteran did not experience characteristics prostrating headache pain. The examiner opined that the Veteran's headaches condition did not have an impact on his ability to work.

The Veteran underwent another headaches examination in March 2016. See Headaches DBQ, March 21, 2016. The Veteran reported daily headaches for which he took Excedrin PM. The Veteran related that he experienced pulsating or throbbing head pain and pain worsening with physical activity. The examiner stated that the Veteran experienced non-headache symptoms associated with headaches, including nausea, vomiting, sensitivity to light and sensitivity to sound, that his headaches lasted less than a day, and that a typical headache was bitemporal but diffuse pain. 

The examiner stated that the Veteran experienced prostrating headache pain once a month which were not productive of severe economic inadaptability. The Veteran related that he last worked part time in 2008 and stopped work due to the contract ending. He has not looked for other work. The examiner opined that the Veteran's headache condition impacted his ability to work, as the Veteran reported he had significant headaches which affected his ability to work both physical and sedentary employment, as his headaches were made worse by fluorescent lighting. 

The Veteran underwent a left ankle examination in March 2016. See Ankle Conditions DBQ, March 21, 2016. The Veteran reported constant left ankle pain and daily flare-ups, and denied any functional loss or functional impairment. Physical examination showed a normal left ankle. The Veteran stated that he occasionally wore an ankle brace. X-rays did not show any arthritis. The examiner opined that the Veteran's left ankle condition impacted his ability to perform occupational tasks, as the Veteran had difficulty with physical employment due to pain with weight bearing, which improved at rest, and would not affect sedentary employment. 

The Veteran underwent a dental examination in April 2016. See Dental and Oral Conditions DBQ, April 5, 2016. The examiner related that the Veteran experienced bruxism. Soft tissue exam, cancer screening, and lymph nodes were all within normal limits. There was bilateral tightness and discomfort to palpation in the mastication muscles. The right joint clicked at opening. There was normal lateral excursive movement. X-rays were within normal limits, exhibiting good trabecular pattern. There was less than 30 percent horizontal generalized bone loss, and an absence of condylar breaking and/or flattening in the TMJ. The examiner opined that, during flare-ups, the Veteran was likely to be further limited in his range of motion. The examiner opined that the Veteran's dental condition did not have an impact on his ability to work. 

The Veteran underwent another TMJ examination in April 2016. See TMJ Conditions DBQ, April 5, 2016. The examiner related that the Veteran experienced bruxism. The Veteran reported that he experienced difficulty opening his mouth and discomfort in the muscle regions of the jaws. The Veteran described experiencing radiating pain associated with crackling noises, and that chewy substances made the discomfort worse. The Veteran stated that he did not handle stress well, and was taking medications to control his temper. The Veteran stated that, during flare-ups, he was unable to open his mouth widely. He denied any functional loss or impairment. 

Upon physical examination, the examiner stated that there was no evidence of pain with chewing, there was objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue, and there was evidence of crepitus or clicking of joints or soft tissue of the right TMJ. There was evidence of loss of range of motion upon repetitive testing in the right TMJ, with pain causing the additional functional loss. Fatigue and lack of endurance limited functional ability with repeated use over a period of time in the right TMJ. Soft tissue exam, cancer screening, and lymph nodes were all within normal limits. There was bilateral tightness and discomfort to palpation in the mastication muscles. The right joint clicked at opening. X-rays did not show arthritis. The examiner opined that the jaw joint and muscle tightness would affect employment because the daily stressors of work could add to the Veteran's headaches and muscle fatigue, and the Veteran might need additional time for rest and recovery after tough days. The examiner added that the Veteran's stress would need to be managed well, and the Veteran would have to attend an occasional medical appointment related to the management of his jaw disability.

VA treatment records showed that the Veteran experienced chronic unemployment. See VA treatment records, February 17, 2005. The Veteran was noted to be unemployed and physically ready for full-time employment. See VA treatment records, April 10, 2012. He was deemed not to have a relevant barrier to employment. See VA treatment records, June 19, 2012. The Veteran stated that he had difficulty finding employment as a result of a felony for counterfeit of securities in 2009. See VA treatment records, July 9, 2012. The Veteran was noted to have excessive absences and tardiness in the vocational rehabilitation program. See VA treatment records,June 19, 2014; February 27, 2018. The Veteran noted that he was unemployed, and has not had a job since October 2015. See VA treatment records, June 19, 2018. 

Private treatment records showed that the Veteran was deemed to experience mild depression and moderate anxiety. The Veteran reported experiencing severe headaches, knee pain aggravated with physical activity, stabbing right upper extremity pain, tingling, numbness, shooting pain, and burning. He also reported left ankle pain. He reported last working in July 2008. See private treatment records, Dayton Pain Center, June 11, 2013. 

Social Security Administration (SSA) records show that the Veteran was deemed disabled as of July 28, 2012, due to diagnoses of fractures of the upper limb and back disorders. See SSA records, received by VA February 19, 2016. A SSA job history indicates that the Veteran worked full-time between October 2006 and July 2008 in environmental services and that he earned $10.00 per hour.

In a May 2017 statement, the Veteran related that he had issues with bending, lifting, breathing, walking, swallowing, writing, constant cramps, spasms, and pain so severe that it makes it difficult to deal with people. See Veteran statement, received by VA May 4, 2017. 

In another statement submitted on the Veteran's behalf, T.B. related that they noticed in 2006 that the Veteran experienced weight loss, inflammation, and swelling. See lay statement, received by VA May 4, 2017. T.B. reported that the Veteran "would complain constantly" about pain going down his legs, knee pain, numbness, inability to pass urine, fecal incontinence, and numbness around the anus. T.B. also stated that the Veteran had a runny, stuffy nose, facial pain, daily inflammation, sinus symptoms right to ten times a year, and difficulty swallowing due to esophageal stiches. 

The Veteran submitted a resume which showed that his last job lasted from April 2006 to July 2008. See resume, received by VA February 10, 2009. The resume showed that the Veteran worked as an environmental services worker, parts inspector, custodial lead worker, assembler, and maintenance worker/groundskeeper. 

In his December 2008 VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, the Veteran reported that he last worked in February 2008, and his job lasted for 11 months. Prior to that, the Veteran worked until April 2007, and that job lasted seven months. The Veteran indicated that he has finished college and had no other education or training before he became too disabled to work. See VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, received by VA December 24, 2008. 

A June 2009 Request for Employment Information in Connection With Claim for Disability Benefits (VA Form 21-4192) indicates that the Veteran worked in housekeeping from September 2006 to April 2007, that he lost his job due to downsizing and that he earned $9,701.00 during this time period. A June 2009 VA Form 21-4192 indicates that the Veteran worked in housekeeping from April 2006 and July 17, 2008, that he last worked on December 13, 2007 and that he earned $825.34 during the 12 months preceding the last date of employment.

In a September 2019 decision, the AOJ granted the Veteran's claim for TDIU. See rating decision, September 25, 2019. The decision was granted on the basis that the Veteran's common etiology of lumbosacral strain and bilateral lower extremity radiculopathy combined with additional service-connected disabilities to create unemployability. 

The ultimate question at issue in this case is whether the Veteran's service-connected disabilities, alone, rendered him incapable of securing or maintaining substantially gainful employment prior to October 4, 2018. Based on consideration of the entire claims file, the Board concludes that they did. As mentioned above, it is not clear to the Board why that particular effective date was chosen by the AOJ. The Veteran met the schedular requirements for a TDIU rating prior to October 4, 2018, in that essentially the same facts existed prior to that date, supporting a TDIU grant.

First, the Board finds that the Veteran has not been gainfully employed since December 21, 2007. The June 2019 VA Forms 21-4192 from the Veteran's former employers indicate that he last worked on December 21, 2007 and that he earned a total of $10,526.34 in 2007. For 2007, the Census Bureau's poverty threshold was $10,210.00. While the Veteran may have had difficulty maintaining employment prior to December 21, 2007, this income exceeded the poverty threshold and hence was not marginal. Therefore, the Veteran is eligible for a TDIU beginning on January 1, 2008.

The January 2012 examiner opined that the Veteran's headaches impacted his ability to work, as when his headaches were severe, the Veteran was limited to sedentary activities only. See Headaches DBQ, January 3, 2012. The November 2013 examiner opined that other conditions such as chronic back pain, right arm pain, and complex regional pain syndrome affected his employability. See Headaches DBQ, November 1, 2013. The March 2016 examiner opined that the Veteran's headache condition impacted his ability to work, as the Veteran reported he had significant headaches which affected his ability to work both physical and sedentary employment, as his headaches were made worse by fluorescent lighting. See Headaches DBQ, March 21, 2016. 

The March 2016 examiner opined that the Veteran's left ankle condition impacted his ability to perform occupational tasks, as the Veteran had difficulty with physical employment due to pain with weight bearing, which improved at rest, and would not affect sedentary employment. See Ankle Conditions DBQ, March 21, 2016. The April 2016 examiner opined that the jaw joint and muscle tightness would affect employment because the daily stressors of work could add to the Veteran's headaches and muscle fatigue, and the Veteran might need additional time for rest and recovery after tough days. The examiner added that the Veteran's stress would need to be managed well, and the Veteran would have to attend an occasional medical appointment related to the management of his jaw disability. See TMJ Conditions DBQ, April 5, 2016. 

Medical treatment records showed that the Veteran was chronically unemployed, experience mild depression and moderate anxiety, severe headaches, knee pain aggravated with physical activity, stabbing right upper extremity pain, tingling, numbness, shooting pain, and burning. See private treatment records, Dayton Pain Center, June 11, 2013. SSA records show that the Veteran was deemed disabled as of July 28, 2012, due to diagnoses of fractures of the upper limb and back disorders. See SSA records, received by VA February 19, 2016. 

To sum up, the Veteran's service-connected physical disabilities would likely prevent any type of physical work involving lifting or significant standing, bending, or walking, and he also would have difficulty with sedentary employment that would involve prolonged sitting. 

The Veteran's previous work experience appears to exclusively involve manual labor, and specifically working as a maintenance worker and a janitor. While some of the examiner have opined that the Veteran would be able to perform sedentary labor, or that his service-connected disabilities did not interfere with his employment, the Veteran has been judged by multiple examiners as no longer able to perform manual work, as he can no longer perform many of the functions necessary for such employment due to his back issues, headaches, and other service-connected disabilities. The Board acknowledges that several VA examiners have indicated that the Veteran's sedentary work ability was unaffected. However, according to his filings with VA, the Veteran graduated from college, and that was his highest level of education. Records show that the Veteran engaged in maintenance work and assembly work. There is no indication in the record that the Veteran had the training, education, or experience that would render him able to maintain office employment, or that he is able to complete such training.

In sum, the Board finds that the Veteran was unable to secure and maintain substantially gainful employment since January 1, 2008. The Veteran has no specialized training which would allow him to find a sedentary job which would accommodate both his physical and psychological disabilities. The Board resolves reasonable doubt in favor of the Veteran that his education, work experience, and employment history, combined with his headache symptoms and back disability, preclude securing or following a substantially gainful occupation. 38 C.F.R. § 3.340. Accordingly, the Board finds that TDIU is warranted since January 1, 2008. Fenderson v. West, 12 Vet. App. 119 (1999).

As the evidence is at least evenly balanced as to whether the Veteran was unable to secure or follow substantially gainful employment due to his service-connected disabilities, the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, warranting entitlement to TDIU as of January 1, 2008. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, supra.

REASONS FOR REMAND

2. Residuals, Status-Post Severe Left Ankle Sprain

The Veteran asserts that his left ankle is worse than the current rating reflects. His residuals, status-post severe left ankle sprain is rated as 20 percent disabling, effective December 30, 2003, under Diagnostic Code 5271.

The Veteran was afforded a VA examination for his residuals, status-post severe left ankle sprain most recently in January 2019. See Ankle Conditions Disability Benefits Questionnaire (DBQ), January 7, 2019. The Veteran reported flare-ups with prolonged standing, walking or climbing. The examiner stated that pain, weakness, fatigability, or incoordination could significantly limit functional ability and range of motion with repeated use over time or during flare-ups. However, the examiner did not provide an opinion regarding how those factors would impact the Veteran's range of motion. 

Pursuant to Sharp, a VA examiner must attempt to elicit information from the record and the Veteran regarding the severity, frequency, duration, or functional loss manifestations during flare-ups before determining that an estimate of motion loss in terms of degrees could not be given. Sharp v. Shulkin, 29 Vet. App. 26 (2017). It also held that any inability to furnish such an estimate must be predicated on a lack of medical knowledge among the medical community at large, rather than insufficient knowledge by the individual examiner. Id. A VA examiner should, on remand, address any flare-ups claimed by the Veteran, based on Sharp.

As such, a remand is necessary to correct a duty to assist error that occurred before the rating decision on appeal. Namely, the AOJ failed to obtain an examination which would properly assess the current severity of the Veteran's diagnosed left ankle sprain residuals as based on the medical records. On remand, this opinion should be obtained.

The matters are REMANDED for the following action:

Afford the Veteran an appropriate VA examination to determine the current severity of the Veteran's residuals, status-post severe left ankle sprain. The record should be made available to the examiner. All necessary tests should be conducted, and the results reported. The need for further physical examination is left to the discretion of the examiner.

Following review of the record and examination of the Veteran, the examiner should provide an opinion as to the following questions:

a) Please identify all left ankle pathology found to be present. Conduct all indicated tests and studies, to include range of motion studies expressed in degrees and in relation to normal range of motion, and describe any pain, weakened movement, and excess fatigability. To the extent possible, express any functional loss in terms of additional degrees of limited motion of the Veteran's left ankle, i.e., the extent of the Veteran's pain-free motion.

b) Pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016), the examination must record the results of range of motion testing for pain on both active and passive motion and in weight-bearing and non-weight-bearing. If a joint cannot be tested on "weight-bearing," the examiner must specifically indicate why that testing cannot be done 

c) Pursuant to Sharp v. Shulkin, 29 Vet. App. 26 (2017), inquire whether there are periods of flare-ups. If the answer is "yes," state their severity, frequency, and duration explaining if there are any additional or increased symptoms and limitations experienced during flares. ALSO name the precipitating and alleviating factors. ALSO estimate, "per [the] veteran," to what extent, if any, they affect functional impairment.

d) In addition, obtain a detailed clinical history from the Veteran and provide a thorough account and analysis of the manner in which the Veteran's left ankle disability affects him in his everyday life, particularly the impact that it has on the Veteran's ability to secure and follow a substantially gainful occupation.

(Continued on the next page)

 

The examiner should elicit a full history from the Veteran and from the lay statements of record. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation. A rationale for all opinions expressed should be provided.

 

 

KRISTY L. ZADORA

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board A. Lech, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.